·too late to avert the accident, and I must hold the respondent responsible ·for the consequences of such want of care.

Let an interlocutory decree be entered for the libellant, and a reference be made to the clerk as commissioner, to ascertain and report the damage sustained·by the dredge and her owners by reason of the collision.

=====

## Case No. 300.

### The AMERICAN EAGLE.

[Cited in The Waverly, 42 Fed. 189. Nowhere reported; opinion not now accessible.]

=====

## Case No. 301.

### The AMERICAN EAGLE.

### The FOREST CITY.

[1 Lowell, 425.][1]

District Court, D. Massachusetts.  Feb., 1870.

COLLISION—BETWEEN STEAMERS — SAILING WITHOUT LIGHTS—RULES BY SUPERVISING INSPECTORS OF STEAMBOATS.

1. The supervising inspectors of steamboats have power, by law, to make regulations not inconsistent with the general laws of navigation, for steamers passing each other.
[Cited in U. S. v. Miller, 26 Fed. 97.]

2. Rule one adopted by the inspectors, so far as it purports to authorize pilots to disregard the general law concerning vessels meeting end on, is void.

3. A ·pilot who obeys the inspectors' rule does so at his own risk, if it turns out that he has disobeyed the law.

4. If a vessel is sailing at night without lights she is prima facie in fault.

5. So if she has no lookout forward.

In admiralty.  Collision.  The libel first in date was brought by the owners of the steamer Forest City, a large coasting vessel which plies between Portland and Boston, against the steam-tug American Eagle, for a collision in the harbor of Boston, at a quarter before six o'clock on Christmas morning, 1869. In the other case the parties were reversed. The steamer was coming up the ·main channel towards East Boston, heading northwest, intending to sweep round near the Grand Junction wharves and proceed to her dock at India wharf. This is the usual course for large steamers when the tide is ebb. The tug was coming down from East Boston towards Dorchester, heading southeast, and was lashed to the port side of a schooner loaded with coal. Neither the schooner nor the tug had any lights, because the master of the tug, who had the entire control of the navigation of both vessels, thought they would be of no use in so light a night. The officers of the steamer saw the tug and schooner, but swore that they could not make out that they were in

motion, and after they found out that fact, were uncertain in which direction they were moving. When they saw that the vessels were approaching each other, the steamer's men sounded their steam-whistle once, which is the signal to go to the right; and they all swore that they distinctly heard one whistle and only one from the tug; the steamer's helm was put to port, but they soon after discovered that the tug had starboarded, and was swinging in the same direction with themselves. They then stopped and reversed their engine, but the vessels came together, and the bow of the schooner struck the port side of the steamer about thirty feet from her stern. The place of meeting was a few hundred feet ahead of the school-ship. On the part of the tug, the evidence was equally clear and positive that she sounded her whistle twice, as a signal to go to the left, and heard no reply from the steamer, but discovered the mistake and stopped and reversed.

H. W. Paine and R. D. Smith, for the Forest City.

G. O. Shattuck, for the tug.

LOWELL, District Judge.  By twenty-ninth section of the act of 30 August, 1852. (10 Stat. 72,) and the ninth section of the act of 1866, as amended by that of 1867, (14 Stat. 228, 411,) the supervising inspectors of steamboats are empowered to make rules, not inconsistent with the navigation laws of the United States, for the government of certain domestic steam vessels in passing each other; and the rules have been made and revised from time to time, and duly promulgated, and both parties in this case appear to have had these rules in mind and to have intended to follow them. Of the latest revision, that of January, 1869, the first rule is that where steamers are approaching each other head and head, or nearly so, it shall be the duty of each to pass to the right, and the pilot of either steamer may be the first to determine to pursue this course, and thereupon shall give one short and distinct blast of his steam-whistle, which the other pilot shall promptly answer. So far the rule is in accordance with the act of congress for preventing collisions, and seems well calculated to aid in its observance. It then proceeds: "But if the course of such steamers is so far on the starboard of each other as not to be considered by the pilots as meeting head and head, or nearly so, or if the vessels are approaching each other in such a manner that passing to the right, as above directed, is deemed unsafe by the pilot of either vessel, the pilot so first deciding shall immediately give two short and distinct blasts of his steam-whistle, which the pilot of the other steamer shall answer promptly by two similar blasts of his steam-whistle, and they shall then pass to the left, or on the starboard side of each other."

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]